(C. D. 245)

E. Dillingham, Inc. *v.* United States

United States Customs Court, Third Division

(Decided November 1, 1939)

*John D. Van Kennen* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges; Evans, J., dissenting

Keefe, Judge. This case involves the duty assessed by the collector upon a pedigreed Holstein bull. The plaintiff imported the bull in question together with three Jersey cows and two calves. All of the animals were originally passed as free of duty under paragraph 1606, act of 1930, as being imported specially for breeding purposes, and the entry was liquidated upon that basis. However, within 2 years from the date of entry a reliquidation was ordered under authority of section 521 on the ground that the collector had probable cause for believing that the entry was fraudulent. Upon reliquidation the

Holstein bull was assessed for duty at 3 cents per pound under paragraph 701. The plaintiff claims that the reliquidation is invalid for the reason that there was no probable cause for the collector to believe there to have been fraud in the case, and consequently the liquidation of September 25, 1937, was final in accordance with the terms of section 514. It is further claimed that the Holstein bull in question is pure bred of the Holstein-Friesian breed and was imported by a citizen of the United States especially for breeding purposes and as the provisions of paragraph 1606 and the regulations of the Secretary of the Treasury governing such importations were fully complied with, the bull is properly entitled to free entry under paragraph 1606.

In support of his claim for free entry, the importer testified that he had been in the cattle-buying business for 10 or 12 years, during which time he had made many importations of live stock for breeding purposes; that previous to the entry herein he had a talk with one Ira E. Morgan in reference to obtaining a bull for him, and that Morgan asked him to procure a good herd sire if he happened to find one while he was in Canada. While in Canada he procured a registered Holstein bull named "Montvic Rag Apple Boy," registered under No. 100627, which he thought would suit Morgan. Thereupon he called his broker and directed him to prepare the entry papers and that in doing so he failed to inform the broker of the weight of the animal. Some days after importation he notified Morgan that he had procured a bull for him. Morgan immediately inspected the bull and advised the importer that the animal did not suit him. Thereafter the importer offered the bull for sale to others for breeding purposes, but was unable to procure a buyer, and subsequently sold him for shipment to the market for slaughter. His testimony in this regard is supported by witness Ira E. Morgan. He testified that he was engaged in farming and breeding purebred cattle and that he was a citizen of the United States; that he was in need of a purebred sire and had asked the plaintiff to keep a good lookout for a sire for him when he was in Canada, and if he found one that he thought would suit him to purchase it for him; that upon importation of the bull in question he examined the same and told the plaintiff that he was not the type of bull he desired, as he was weak in a few points where his herd of cows was weak.

The Government called as witness the acting customs agent, who testified that he made the investigation relative to the bull; that he questioned the plaintiff relative to the sale of the bull; that plaintiff told him that the bull had become vicious and he could not handle it and therefore sold it as beef, and that he had sold Jenkins two heavy bulls on previous occasions for beef. A veterinary inspector for the Department of Agriculture testified that he inspected the bull, de-

termining that he was physically fit and that the markings on the pedigree certificate agreed with the markings on the animal. The appraiser of merchandise testified that at the port of Waddington there were no facilities for weighing cattle. Frank Jenkins, a farmer and cattle dealer testified that the plaintiff sold the bull to him and that during the year 1937 he had bought bulls on other occasions; that the plaintiff was importing bulls and trading them with farmers for bulls that were too old, and the bulls that were taken in trade were sold to him; that the bull in question weighed 2,060 pounds; that he shipped the bull to the Jersey City stockyards; and that ordinarily when a bull becomes of no value or becomes unable to handle or for other reasons undesirable, it is sold as beef.

The paragraph of the law admitting purebred stock into the United States without the payment of duty provides in part as follows:

PAR. 1606. (a) Any animal imported by a citizen of the United States specially for breeding purposes, shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes, except black or silver foxes: *Provided*, That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed. * * *

(b) The Secretary of the Treasury may prescribe such additional regulations as may be required for the strict enforcement of this provision.

*   *   *   *   *   *   *

It is quite apparent to us that the regulations in respect to the importation of animals for breeding purposes were fully complied with. The certificate of pure breeding and the pedigree of the animal were furnished and duly authenticated by the proper custodian, and the same accepted by our Department of Agriculture. In addition, as heretofore set out, the importer testified without contradiction that the bull was imported for breeding purposes and his testimony was supported by a disinterested witness who testified that he requested the importer to secure a Holstein bull for him. The collector reliquidated the entry upon suspicion that the bull was imported for slaughter rather than for breeding purposes. True, it was established that the bull, after importation, was sold for slaughter. Are we to decide from that fact alone that this purebred, registered, Holstein bull was imported for beef rather than for breeding purposes? The writer hereof presided at the trial of this case at Ogdensburg and heard the evidence, and was impressed with the truth of the testimony of the witnesses offered upon the part of the plaintiff and with their demeanor as witnesses. Neither their truth and veracity nor their general moral character were attacked. In fact, the Government failed to offer a scintilla of evidence that this bull was not purchased in good faith with the intent to sell it for use for breeding purposes, except the mere fact that after importation it was later sold for slaughter.

The sole question involved here is the intent of the importer at and before the time of importation rather than the disposition of the animal subsequent to its entry.

This case is on all-fours with the decision of this division in the case of E. Dillingham, Inc. v. United States, T. D. 43957. The cases arose at the same port. The same kind of animal was involved. Almost the identical evidence was presented, and it seems that we are bound by the decision in that case, wherein it was decided that it is not necessary to use the animal so imported in the manner provided by statute or to sell it for that purpose in order to enable the importation to be admitted without the payment of duty. The United States Circuit Court in the case of United States v. 196 Mares (29 Fed. 139) held to the same effect.

The point was raised by the Government that the bull in question weighed 2,060 pounds at the time it was sold for slaughter, and that the importer paid $90 for him in Canada, while the entry papers gave the bull's weight as 1,000 pounds and his value as $75. If the bull was imported for breeding purposes, there would be no object in securing either his weight or his purchase price since the statute permits free entry of animals imported for such purpose. In our opinion, both the value and the weight of the animal in question are wholly immaterial. The statute provides that animals imported for breeding purposes "shall be admitted free, whether intended to be used by the importer himself or for sale for such purpose," and in our opinion the question whether Morgan was careless in failing to specify the kind of bull he desired, or whether the bull was purchased on order from Morgan, or whether it was underweight or undervalued are wholly immaterial to any issue arising in this case.

For the reasons stated, we are convinced that there were insufficient facts present to warrant the collector's reliquidating the entry under the provisions of section 521 for fraud. We therefore hold that the collector's reliquidation of February 25, 1938, is invalid and that any duties collected by reason thereof should be refunded.

### DISSENTING OPINION

Evans, Judge: This is an action against the United States brought to recover a sum of money claimed to have been paid in excess of the amount due upon one Holstein bull imported at the port of Ogdensburg, N. Y., at which port the hearing was had. It is claimed by the plaintiff that the bull was imported by a citizen of the United States especially for breeding purposes and is therefore entitled to free entry under paragraph 1606 of the Tariff Act of 1930.

The provisions of said paragraph 1606 are as follows:

FREE LIST.

PAR. 1606 (a) Any animal imported by a citizen of the United States specially for breeding purposes shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes, except black or silver foxes: *Provided*, That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed: *Provided further*, That the certificate of such record and pedigree of such animal shall be produced and submitted to the Department of Agriculture, duly authenticated by the proper custodian of such book of record, together with an affidavit of the owner, agent, or importer that the animal imported is the identical animal described in said certificate of record and pedigree. The Secretary of Agriculture may prescribe such regulations as may be required for determining the purity of breeding and the identity of such animal: *And provided further*, That the collectors of customs shall require a certificate from the Department of Agriculture stating that such animal is pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed.

(b) The Secretary of the Treasury may prescribe such additional regulations as may be required for the strict enforcement of this provision.

(c) Horses, mules, asses, cattle, sheep, and other domestic animals straying across the boundary line into any foreign country, or driven across such boundary line by the owner for temporary pasturage purposes only, together with their offspring, shall be dutiable unless brought back to the United States within eight months, in which case they shall be free of duty, under regulations to be prescribed by the Secretary of the Treasury: *And provided further*, That the provisions of this Act shall apply to all such animals as have been imported and are in quarantine or otherwise in the custody of customs or other officers of the United States at the date of the taking effect of this Act.

The collector admitted the bull free of duty and the entry was liquidated on that basis, but within 2 years from the date of entry a reliquidation was ordered under authority of section 521 of the Tariff Act of 1930 on the ground that the collector had probable cause for believing that the entry was fraudulent, and the bull was assessed for duty at 3 cents a pound under the provisions of paragraph 701 of said act. That paragraph, insofar as pertinent, is as follows:

Par. 701. Cattle, weighing * * * seven hundred pounds or more each, 3 cents per pound * * * .

I quote also for convenience of reference said section 521 as follows:

SEC. 521. RELIQUIDATION ON ACCOUNT OF FRAUD.

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

In support of his claim for free entry the importer testified that he had been in the cattle-buying business for 10 or 12 years during which time he had made many importations of livestock for breeding purposes and that some time before making this entry, which included three Jersey cows and two calves, he had a talk with Mr. Ira E.

Morgan in reference to obtaining a bull for him. On direct examination he was asked:

Q. Will you state, as near as you can recall, what Mr. Morgan said and what you said in connection with that?

His answer was as follows:

Well, he told me to get a good herd sire if I ran across one while I was in Canada.

On his trip into Canada the importer did buy a registered Holstein bull named "Montvic Rag Apple Boy," registered under No. 100627. No question is raised as to the pure breeding of the animal. The importer claims he called the customs broker and told him to make out the entry papers but that he didn't give any weights to the broker. He stated that he kept the bull on his premises about a week before he called Mr. Morgan for whom he claims he had made the purchase. Morgan said "I will run down at the noon hour." Morgan did go down and looked at the bull and said, "Well, he doesn't suit me," and that was all that was said about it. The witness stated he afterwards offered the bull for breeding purposes and was unable to sell him for that purpose but that he subsequently sold him for shipment to the market as beef.

The evidence shows the bull weighed 2,060 pounds and that the importer paid $90 for him in Canada. The entry papers give the bull's weight as 1,000 pounds and his value as $75. When shown the invoice bearing his signature the importer stated that he had nothing to do with the matter of the weight or the value, that he did not make out the entry. When asked if he signed it he said: "I signed it ahead lots of times." When asked if he would tell how he got in touch with the broker, what arrangements he has with his broker, he answered:

When I am in there I sign up a lot of affidavits, and when I come in there he goes ahead and makes the entry.

The following then took place:

X Q. And you never tell him what you pay for them?—A. No; I never do.
X Q. You never do?—A. No.
X Q. You never tell him the weight of the cattle?—A. No; I never do.
X Q. You enter them all free, for breeding purposes?—A. Yes.
X Q. Always?—A. Yes.

Mr. Morgan, for whom it was claimed the bull was purchased, testified that he was engaged in farming and breeding purebred cattle; that he is a citizen of the United States and that he had some talk with Mr. Murphy, the importer, with reference to purchasing a bull. When asked to state what the conversation was he answered:

I was in need of a purebred sire, and I called on Murphy one morning and told him some time when he was in Canada to keep a good lookout for a sire for me, and when he found one that he thought would suit me to buy him.

By Judge KEEFE: Did you describe the type of animal you wanted?—A. No; I didn't, but I figured he knew about what type I needed.

He stated that he examined the bull "Montvic Rag Apple Boy" and told Mr. Murphy that he wasn't the type of bull he had set his heart on; that he was weak in a few points where his herd of cows was weak. He was asked this question on cross-examination:

X Q. Now, you stated that this bull would be all right for breeding if you didn't want an awfully good type. What do you mean?—A. What I meant by that is that if you are traveling your herd at the fair you have to have a good type.

In connection with the claim that the bull was purchased for Morgan it would seem that he, Morgan, was extremely careless in failing to specify the kind and type of bull he wanted, that is to say, he made no disclosure that he wanted one for show purposes or anything else. It scarcely seems possible that a breeder who is engaged in showing his herd would fail when ordering a sire for such herd to give particular specifications as to kind, type, and points desired.

This testimony, in my opinion, does not disclose sufficient facts to warrant us in holding that this bull was bought on an order from Morgan. Rather it appears that Murphy bought him in the hope that Morgan would buy him but that if he did not sell him to Morgan he could find a market for him at a profit.

Furthermore, it is my opinion that there were sufficient facts to warrant the collector in believing that there was probable cause for thinking that this bull was not purchased in good faith for Morgan since his weight was understated and he was undervalued on the sworn invoice and was sold within three weeks for shipment to the market. His interview with the special agent gives evidence of a willingness to deceive the customs officials, as is shown by the following testimony:

Q. Did you call in the importer?—A. I called on Mr. Murphy about August 3, * * *.

I first asked him if he had imported the bull in question. He said he had. I asked him if it was in his possession, and he said yes. I asked him if I could see it. He then changed his story and said he sold it to Frank Jenkins, of Norwood, for beef. I asked him the reason, and he said the bull became vicious and he couldn't handle it. I asked him about other importations and he said he sold Jenkins two heavy bulls on previous occasions for beef * * *.

Therefore, there was probable cause to indicate fraud and the reliquidation was timely under the statute (Section 521, *supra*).

Under section 485 of the Tariff Act of 1930 the consignee is required to make an affidavit of the truth of the facts necessary to be set out in the entry form. In the instant case this affidavit was made out by an attorney for the customs broker. This brokerage firm is one of long standing and of good reputation. It is difficult for this member of the court to believe that its attorney would make an affidavit to facts that had not been furnished by an importer. In fact, good faith requires

that the importer furnish the broker, who is unfamiliar with the purchases, the information required by law to be given the customs officials. If, as the importer claims, he is in the habit of filling out affidavits and other papers in blank in connection with entries of merchandise, such practice would likely result in deceiving the customs officials, as was the fact in this case, and should subject the parties engaged in such practice to discipline, if it existed.

For the above reasons I am of the opinion that the collector's action in assessing duty at the rate of 3 cents per pound under paragraph 701, *supra*, should be affirmed.